### TOOTHMAN v. UNITED STATES.

#### (Circuit Court of Appeals, Fourth Circuit. November 22, 1912.)

#### No. 1,100.

CRIMINAL LAW (§§ 376, 1169*)—EVIDENCE—COMPETENCY.

 On the trial of a defendant charged with sending obscene letters through the mails, testimony of a witness as to statements made by him admitting improper relations with a married woman, having no connection with the offense charged, was incompetent, and its admission prejudicial error, especially where defendant was a witness, and his testimony conflicted with that of another witness.

 [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 836–839, 841, 843, 3088, 3120, 3137–3143; Dec. Dig. §§ 376, 1169.*

 Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

In Error to the District Court of the United States for the Northern District of West Virginia, at Parkersburg; Alston G. Dayton, Judge.

Criminal prosecution by the United States against M. E. Toothman. Judgment of conviction, and defendant brings error. Reversed.

 This is a criminal action, tried at the June term, 1910, of the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg. The plaintiff in error, M. E. Toothman (hereinafter referred to as the defendant), was charged with the violation of section 3893, Revised Statutes (U. S. Comp. St. 1901, p. 2658), in two counts, as follows: " * * * That M. E. Toothman on the ——— day of May, 1908, in the said division of said District Court, and within the jurisdiction of said court, did then and there unlawfully, feloniously, willfully, and knowingly deposit and cause to be deposited in a post office of the United States, to wit, the Grafton and Wheeling Railway Post Office, in the state of West Virginia, and in the circuit and district aforesaid, for mailing and delivery certain nonmailable matter, to wit, a letter inclosed in an envelope and which said letter was obscene, lewd, and lascivious and is unfit to be set forth in this instrument and to be spread upon the records of this honorable court, and which said envelope containing the letter as aforesaid was then and there directed to 'Mrs. Odie Mercer', Fairmont, Marion County, W. Va.,' he, the said M. E. Toothman, knowing the said letter to be obscene, lewd, and lascivious, and the mailing by him as aforesaid being then and there contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States. * * * That the said M. E. Toothman on the ——— day of June, in the year 1908, in the said district and within the jurisdiction of said court, did then and there unlawfully, feloniously, knowingly, and willfully deposit and cause to be deposited in a post office of the United States, to wit, the Grafton and Wheeling Railway Post Office, in the state of West Virginia, and

in the circuit and district aforesaid, for mailing and delivery, certain nonmailable matter, to wit, a letter inclosed in an envelope, and which said letter was obscene, lewd, and lascivious, and is unfit to be set forth in this instrument and to be spread upon the records of this honorable court, and which said envelope containing the letter as aforesaid was then and there directed to 'Mrs. Odie Mercer, Fairmont, W. Va.,' he, the said M. E. Toothman, knowing the said letter to be obscene, lewd, and lascivious, and the mailing by him as aforesaid being then and there contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The trial resulted in a verdict of "guilty," and the defendant was sentenced to be imprisoned and confined to hard labor in the penitentiary at Leavenworth, Kan., for a period of four years from the date of the judgment, from which judgment a writ of error was sued out to this court.

Harry Shaw and E. M. Showalter, both of Fairmont, W. Va., for plaintiff in error.

H. Roy Waugh, U. S. Atty., of Parkersburg, W. Va. (H. J. Wilcox, Asst. U. S. Atty., of Parkersburg, W. Va., on the brief).

Before PRITCHARD, Circuit Judge, and WADDILL and SMITH, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). We have carefully considered the various assignments of error, and are of the opinion that with the exception of the third assignment they are without merit, there being no objection or exception upon which to base them. This assignment is in the following language:

"The court erred in permitting the witness Odie Nuzum to testify with reference to conversations had between her and the defendant about the defendant's relations with one Lulu Hamilton."

It is alleged in the indictment that the letters were addressed and transmitted through the mails to Mrs. Odie Mercer, but it appears from the evidence that Mrs. Mercer, subsequent to the finding of the indictment, married a man named Nuzum. Therefore, in referring to her testimony, she will be spoken of as Mrs. Nuzum.

The record discloses the fact that one of the letters alleged to have been addressed to the witness Mrs. Nuzum contained a reference to a woman by the name of Lulu Hamilton. While Mrs. Nuzum was on the witness stand for the purpose of identifying the letters referred to in the indictment, counsel for the government, among other things, asked the following questions, to which answers were made as follows:

"Q. Reference is made here in these letters, one or the other of them, the second one, I believe, to Lulu, whom you say is Lulu Hamilton, going to Wheeling or his securing work for Lulu Hamilton in Wheeling—

"A. Yes, sir.

"Q. Do you know anything about that from him personally?

"A. Yes, sir.

"Q. Did he ever discuss that with you and tell you about securing work for Lulu Hamilton?

"A. Yes, sir.

"Q. What did he tell you about securing employment there for Lulu Hamilton?

"Mr. Shaw: Objected to, which objection is overruled by the court and exception taken to the ruling of the court.

"A. He said he had taken her there. In the first place he said he didn't want her and her husband to live together, and they shouldn't live together if he could help it; and he said he had taken her to Wheeling and intended to get her a nice place to stay up there, and didn't intend to let her husband know where she was.

"Mr. Shaw: I move to exclude that answer. Motion overruled by the court and exception taken to the ruling of the court."

The defendant is charged in the indictment, as appears from the statement of facts, with sending two letters inclosed in envelopes through the mails, said letters being obscene, lewd, and lascivious, and that the transmission of the same through the mails was in violation of section 3893, Revised Statutes. The witness, Mrs. Nuzum, among other things, testified as follows:

"Q. I will ask you whether or not any time you ever received any letters from Mr. Toothman?

"A. Yes, sir.

"Q. I hand you a letter here under the headline, 'Farmington, W. Va., July ——, 1908,' addressed to 'My Sweet Girl Odie,' not signed and containing about five pages, and will ask you whether or not you have seen that letter before, and, if so, when did you first see it?

"A. Yes, sir, I saw it before. I saw it when I got it, when I received it.

"Q. Where did you receive it?

"A. I didn't read the letter. I must have received it in the Fairmont post office.

"Q. Look at that particular letter, and say whether or not you received that particular one at Fairmont?

"A. Yes, sir; I received it at the post office at Fairmont.

"Q. At the post office, what do you mean by that?

"A. I mean they didn't deliver it.

"Q. You mean when it was delivered that it wasn't delivered by a mail carrier, but you received it at the post office?

"A. Yes, sir."

Any evidence which tended to prove that these letters were written by the defendant and transmitted through the mails was competent, but we cannot understand upon what theory evidence as to the defendant's improper relations with another man's wife could have been material in the trial of the case in the lower court, inasmuch as such evidence was purely collateral, and could in no wise affect the guilt or innocence of the defendant.

In the enactment of section 3893 of the Revised Statutes (U. S. Comp. St. 1901, p. 2658) it was the purpose of Congress to prevent evil-minded persons from corrupting the morals of the people by providing that it should be unlawful to send obscene, lewd, and lascivious letters through the mails. The object sought to be attained is of the highest importance, affecting as it does the welfare of the people. Nevertheless, when one is arraigned for trial in a case wherein his liberty is involved and the punishment is infamous, it is of the highest importance that his rights should be safeguarded by rejecting any incompetent evidence that is calculated to improperly influence the jury against him. In this instance the witness was permitted to testify as to relations between the defendant and a third party in which, among other things, it was stated that the defendant had declared his purpose to separate Lulu Hamilton from her husband and thus break up their home

relations. This within itself was a serious charge, and, if believed, was calculated to affect the credibility of the defendant as a witness. It appears from the testimony of Mrs. Nuzum that the letters were received through the mails. Her testimony as respects this point was flatly contradicted by the defendant. Thus it will be seen that there was a well-defined issue as to whether the letters in question had been actually transmitted through the mails. Whilst testimony of this character to affect the credibility of a witness may be drawn out of him on cross-examination on the stand, yet it is a collateral matter which cannot be testified to by a third party, as was done in this case; and, although the admission of testimony that may not be strictly competent under the issues is not necessarily ground for a new trial, yet this testimony as so given was calculated to influence the jury in determining the weight to be given the testimony of the defendant upon the issue of fact involved, viz., whether or not the letters had been transmitted through the mails.

It matters not what may be the charge against a defendant, he is entitled to the presumption of innocence until the same is overcome by competent evidence. And where it appears, as in this instance, that evidence as to the commission of other offenses by the defendant in no wise related to or connected with the offense for which he is being tried, not elicited by cross-examination of the defendant, but testified to by a third party, is permitted to go to the jury, it is but reasonable to assume that such evidence created a prejudice in the minds of the jury against the defendant.

We are therefore of the opinion that the ruling of the lower court in refusing to exclude this testimony was prejudicial error. For the reasons herein stated, the judgment of the lower court is reversed, and the case is remanded, with directions to set aside the verdict and grant a new trial.

Reversed.